# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-IA-01795-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY*

*v.*

*LEON GREGORY, M. W. STEINHAUER, ERVIN LEWIS, CARL F. BOSHERS, NATHANIEL FINLEY, ROY LEE CHRISTOPHER, HOWARD E. CRAWFORD, LUTHER STEVISON AND JOHNNY WILSON, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/24/2003 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GLENN F. BECKHAM |
| ATTORNEYS FOR APPELLEES: | ANDREW M. W. WESTERFIELD |
| | ALVA A. HOLLON, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 03/17/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is a Rule 20 joinder case.  Plaintiffs/Appellees in this case state that the case is the same as ***Illinois Central R.R. v. Travis***, 808 So.2d 928 (Miss. 2002), and heavily rely on ***Travis*** for their argument that joinder under M.R.C.P. 20[1] is proper for them.  They assert that

---

[1] Rule 20 reads:"(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction,

if this Court does not affirm the trial court's denial of defendant ICRR's Motion to Transfer and/or Dismiss, we are left with no alternative but to overrule *Travis*, and "sap *Armond* of its vitality" regarding aggregation in "mature torts." We agree that due to the recent development in our Rule 20 jurisprudence, *Travis* would likely not be decided in the same way today, but we disagree that our decision today is in derogation of *Armond*, as explained below. Further, we hold that the facts of the present case do not pass the test for proper joinder under Miss. R. Civ. Proc 20, thus we reverse the trial court and remand for further proceedings consistent with this opinion.

## FACTS

¶2. The plaintiffs in this case are nine present and/or past employees of Illinois Central Railroad (ICRR), who filed suit against ICRR in the Tunica County Circuit Court. The plaintiffs (hereafter "Employees") allege that they suffered injuries during the course and scope of their employment with ICRR as a result of the negligent acts and omissions[2] by ICRR in violation of the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq.

---

occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."

[2] The employees claim that ICRR negligently failed to provide them with reasonably safe places to work; negligently failed to furnish them with safe equipment including adequate protective mask and/or respiratory protective devices; negligently failed to warn them of the hazardous nature of asbestos, diesel fumes and/or silica rock dust; and negligently failed to provide them with safe and proper ventilation at their work places.

Specifically, the employees claim that they suffered occupational lung disease due to exposure to toxic substances including asbestos, asbestos-containing products, diesel exhaust, silica rock dust and coal. ICRR filed a Motion to Transfer and/or Dismiss, which the circuit court denied, although the circuit court allowed certification of interlocutory appeal to this Court. ICRR then petitioned for, and we granted the interlocutory appeal. *See* M.R.A.P. 5.

¶3. The following table, taken from ICRR's brief, and adopted by the employees, gives a succinct summary of pertinent information for each employee:

| Name | Residence | Alleged Work Locations | Craft | Alleged Dates of Employment with ICRR | Claims Exposure in Tunica County |
|---|---|---|---|---|---|
| Boshers | Hernando, MS | Memphis | Laborer/ carman | 1966 - 1989 | yes |
| Christopher | Millington, TN | Ill. to Memphis | trackman | 1948 - 1989 | no |
| Crawford | Memphis, TN | Memphis | laborer/ carman/ material handler | 1967 - 1981 | no |
| Finley | Memphis, TN | Memphis | carman/ yardman/ airman | 1974 - 1981; 1995 - present | no |
| Gregory | Tunica, MS | Fulton, KY to New Orleans | trackman/ switch oiler | 1971 - 2000 | yes |
| Lewis | Terry, MS | Jackson | carman | 1963 - present | no |
| Steinhauer | Jackson, MS | Jackson | carman | 1973 - present | no |

| Stevison | Memphis, TN | "all over" Miss. | trackman/ welder helper/ section foreman | 1946 - 1987 | yes |
|---|---|---|---|---|---|
| Wilson | Memphis, TN | Memphis - Mobile | trackman | 1973 - 1988; 1990 - present | yes |

¶4.    In its Order Denying Defendant's Motion to Transfer and/or Dismiss, the circuit court stated in pertinent part:

> The Court finds that similar issues have previously been ruled on through an interlocutory appeal in the case of *Illinois Central Railroad v. Travis*, 808 So.2d 928 (Miss. 2002). . . .
>
> The Court finds that the Defendant has admitted that venue is proper for one (1) Plaintiff, Leon Gregory, who resides in Tunica County, Mississippi and has alleged exposure in the Complaint to asbestos and other hazardous materials in Tunica County while employed by the Defendant.  The Court further finds that one(1) Plaintiff lives in Desoto County, Mississippi and alleges common exposures as the other Plaintiff in Tunica County.   Two(2) Plaintiffs live in Memphis, Tennessee that allege common exposure with other Plaintiffs in Tunica County.    Two(2) Plaintiffs live in Mississippi and allege exposure common to other Plaintiffs in Hinds County.    One(1) Plaintiff lives in Millington, Tennessee and alleges exposure common with other Plaintiffs in Alcorn and Tushimingo[sic] Counties in Mississippi and two(2) Plaintiffs live in Memphis, Tennessee that allege common exposure with other Plaintiffs in Memphis, Tennessee.
> . . . .
> The Court further finds that for joinder to be proper in the case at bar, the cause of actions must arise out of **similar**[3] transactions or occurrences.   In that regard, the Court finds that in the case at bar there are questions of law or fact common to all Plaintiffs, which include: . . .[4]

---

[3] The incorrect statement of this requirement by the circuit court is addressed later in this opinion.

[4] The court reiterated the claims of negligence listed in footnote 2 above.

Based on the above, the Court finds that Plaintiffs are properly joined in this case under Rule 20 MRP . . . .[5]

(emphasis added).

## ANALYSIS

¶5.    ICRR argues that joinder is improper in this case for these plaintiffs because their employment consisted of work in different crafts at different work sites during different periods of time; plaintiffs have made no specific allegations concerning the work history or exposure of each; and there is no transaction or occurrence or distinct litigable event common to all plaintiffs.    The standard of review for joinder cases is abuse of discretion.    *Janssen Pharmaceutica, Inc. v. Armond*, 866 So.2d 1092, 1097 (Miss. 2004).

¶6.    Employees argue that based on *Travis* and affirmed by this Court's recent decision in *Armond*, joinder is proper in this case, and that ICRR has failed to show that the trial court abused its discretion in denying ICRR's motion to transfer and/or dismiss.    A review of *Travis* and *Armond* will help in understanding the employees' position.    In *Travis*, Mr. Travis worked for ICRR for 41 years from 1949 through 1990.    Later he was diagnosed with asbestosis and died from lung cancer within the year.    Travis's wife joined 71 other former ICRR employees and filed a complaint under FELA.    Twenty-seven additional plaintiffs were joined by amendment, bringing the total to 98 plaintiffs, including many non-Mississippi residents. Travis was a resident of Tennessee and worked in Kentucky and Tennessee during his employment with ICRR.    The plaintiffs in this case claimed injuries from exposure to asbestos

---

[5] ICRR additionally objected to venue-by-joinder under Rule 82(c), and the circuit court ruled that venue-by-joinder was allowed.  Because improper joinder under Rule 20 is dispositive in this case, the Rule 82 argument is not addressed here.

5

because ICRR failed to provide a safe working environment for its employees. The trial court denied ICRR's motion to dismiss Travis's claim for improper joinder. This Court affirmed the trial court's decision.

¶7.     This Court began its analysis of the joinder issue in *Travis* by stating "[t]his Court has recognized that the Official Comments to Rule 20 call for consideration on a case-by-case basis 'utilizing a liberal approach toward joinder.'" At the time *Travis* was decided, the Comment to Rule 20 said, in pertinent part "[t]he general philosophy of the joinder provisions of these rules is to allow <u>virtually unlimited joinder</u> at the pleading stage but to give the court discretion to shape the trial to the necessities of the particular case." (emphasis added). This liberal philosophy was partially in response to Mississippi's lack of a class action rule. See *Armond*, 866 So.2d at 1102-03 (Graves, J., specially concurring). As noted in *American Bankers v. Alexander*, 818 So.2d 1073, 1078 (Miss. 2001), "we have fashioned our Rules of Civil Procedure to handle cases of this type under Rule 20 and 42."

¶8.     The "virtually unlimited" language was deleted from the Rule 20 Comment in February, 2004, just after this Court's decision in *Armond*. One reason for the deletion of this language is that, as the Court attempts to craft rules for fair and efficient court administration during a time of growing mass tort actions, it must ensure that a liberal joinder policy does not result in prejudice to the parties involved. In an effort to provide a reasonably fair forum for all parties, our joinder philosophy must necessarily undergo modification as required by circumstances.

¶9.     An example of the type of prejudice our liberal joinder philosophy has produced is seen in a recent case, in which a massive jury award was not supported by the evidence, and which

6

showed that the jury was confused by the evidence presented.  *See* ***Janssen Pharmaceutica, Inc. v. Bailey***, 878 So.2d 31 (Miss. 2004) (Jury awarded each plaintiff $10 million even though plaintiffs varied widely in age and alleged injury).

¶10.  In ***Armond***, we stated that "the discretion to consolidate is not unfettered. Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial.... The benefits of efficiency can never be purchased at the cost of fairness." ***Armond***, 866 So.2d at 1100 (*quoting* ***Malcolm v. Nat'l Gypsum Co.***, 995 F.2d 346, 354 (2d Cir. 1993)).  Thus, based on experience garnered since ***Travis***, we have moderated the "virtually unlimited joinder."  As stated in ***Armond***, the issue is "where to draw the line with respect to what is considered 'the same transaction, occurrence, or series of transactions or occurrences.'" ***Armond***, 866 So.2d at 1097.  We revised the Comment to Rule 20 in February, 2004, to explain this requirement.  The Comment now includes the statement that "[t]he phrase 'transaction or occurrence' requires that there be a distinct litigable event linking the parties." This sentence introduces and complements the following language that already existed at the time ***Travis*** was decided:

> Rule 20(a) simply establishes a procedure under which several parties' demands arising out of the **<u>same litigable event</u>** may be tried together, thereby avoiding the unnecessary loss of time and money to the court and the parties that the duplicate presentation of the evidence relating to facts common to more than one demand for relief would entail.

M.R.C.P. 20 cmt. (emphasis added).  The terms "distinct litigable event" and "same litigable event" are not defined in the Comment.  A court's determination of whether two or more plaintiffs' claims arise from a distinct, litigable event is very much fact dependent.

7

¶11.    This determination includes, among other things, whether a finding of liability for one plaintiff essentially establishes a finding for all plaintiffs, indicating that proof common to all plaintiffs is significant.    The appropriateness of joinder decreases as the need for additional proof increases.    If plaintiffs allege a single, primary wrongful act, the proof will be common to all plaintiffs; however separate proof will be required where there are several wrongful acts by several different actors.    The need for separate proof is lessened only where the different wrongful acts are similar in type and character, and occur close in time and/or place.

¶12.    An example comes from *Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28 (S.D. Miss. 1994), which was cited with approval in *Armond*.    The example is that there are four automobiles, A, B, C, and D.    A and B collide, causing B to strike C, which in turn strikes D, parked at a curb.    Here is a series of events which produce multiple claims.    However, all possible claims will have stemmed from a common transaction or event, namely the collision of A and B.    Further, assume A was at fault in the example; and further assume that 10 minutes earlier on the same highway, A negligently caused a collision involving E.    The first collision caused by A is an entirely different transaction or event from the second collision caused by A.    In each case the great majority of the proof will evolve around its own separate location, its own separate sets of witnesses, its own separate set of environmental circumstances, and the particulars of the plaintiff or plaintiffs in each case.    Very little evidence, if any, would be common to both collisions.

¶13.    An example of separate claims from the same transaction or occurrence which would probably pass the test would be when a single defendant dumps toxic waste at the same place into the same body of water daily over an extended period of time.    Those who could prove

similar injuries in the same span of time may be joinable under the same litigable event test for this series of occurrences, although complex issues of causation and damages may prohibit joinder depending on whether the volume of evidence expected to be introduced would overwhelm the jury. A rule of thumb is that when an act or omission of a defendant does not affect all plaintiffs in much the same way, then there is probably not a distinct litigable event.

¶14. In the present case, Plaintiffs allege general negligent acts by the company; they have not alleged any specific wrongful acts or omissions by any specific actor. Plaintiffs worked under different supervisors, had different jobs, in different locations, were exposed to several different substances at different times, and have different injuries. Thus, the alleged injuries are not close in time or location. The amount of evidence that would have to be introduced to prove all these in one trial would certainly overwhelm a jury. Additionally, there is a danger of defendants being prejudiced by the "perfect plaintiff" problem. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 343-45 (4th Cir. 1998) (improper aggregation allows plaintiffs to litigate on behalf of a composite "perfect plaintiff" combining the strongest aspects of unrelated claims).

¶15. There are other issues that cause concern in the present case. The employees seem to rely on *Armond* for the proposition that since asbestos claims are "mature torts," they are immune from joinder analysis. This is not the case. In *Armond*, 866 So.2d at 1099, we indicated that "signature diseases" such as those associated with asbestos exposure would allow easier aggregation of claims. We also cited *In re Ethyl Corp.* as an opinion that listed factors that bear on the permissibility of aggregation in asbestos cases:

9

These are known as the Maryland factors. They were first articulated in an unreported federal district court decision, *In re All Asbestos Cases Pending in the United States District Court for the District of Maryland*, slip op. at 3 (D.Md. Dec. 16, 1983) (en banc). The Maryland factors are "(1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether plaintiffs were living or deceased; (6) status of discovery in each case; (7) whether all plaintiffs were represented by the same counsel; and (8) type of cancer alleged."

*In re Ethyl Corp.*, 975 S.W.2d 606, 611 (Tex. 1998). Thus, if all joined plaintiffs worked at a common work site, at a similar occupation, during the same time, were still alive, and had the signature disease mesothelioma, then it would be easier to justify aggregation of claims than plaintiffs who worked at several different work sites, in different jobs, for different periods of time, were exposed to several different agents, and suffered the very vague "occupational lung disease." As stated in *Harold's Auto Parts, Inc., v. Mangialardi*, "[e]ven though asbestos litigation is, indeed, a "mature tort," as discussed in dicta in *Armond*, this Court did not intend in that case, and we shall not proceed here, to exempt asbestos cases from the requirements of Rule 20, of the Mississippi Rules of Civil Procedure." *Harold's Auto Parts, Inc. v. Mangialardi*, 889 So.2d 493 (Miss. 2004).

¶16. Another issue, also discussed in *Mangialardi*, and again in *3M Co. v. Hinton*, 2005 WL 374460 (Miss. 2005), is that plaintiffs must provide a minimum showing that supports the requirements for their joinder of claims. There must be more than the conclusory allegations of common exposures found in the present case. In *Mangialardi*, a negligence case based on exposure to asbestos, the Court stated that the plaintiffs must state, at a minimum, who each plaintiff is suing, and specifically when and where each plaintiff was exposed. In *Hinton*, the Court added that the plaintiff must indicate the specific injury sustained, and we now add to this

10

that the plaintiff must specify the distinct litigable event common to all plaintiffs. This information by no means guarantees that plaintiffs may be joined in one suit, but it should supply the trial court with the information necessary to make this determination.

¶17. As for the circuit court order denying ICRR's motion to transfer, the court erred in stating that Rule 20 requires only that cause of actions must arise out of **similar** transactions or occurrences, which can be satisfied by common questions of law or fact. Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by or against each plaintiff or defendant relating to or arising out of the **same** transaction or occurrence; and, (2) some question of law or fact common to all the parties will arise in the action. Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a). M.R.C.P. 20 cmt. (emphasis added).

¶18. As to the out-of-state plaintiffs with causes of action accrued out-of-state, these claims should be dismissed. The doctrine of forum non conveniens protects litigants from unnecessary burdens and to protect its courts and taxpayers from incurring the expense of litigating foreign disputes. To determine if the application of the forum non conveniens doctrine is appropriate, a reviewing court must balance various public and private factors including: (1) relative ease and access to sources of proof; (2) availability of compulsory process for obtaining attendance of unwilling witnesses; (3) possibility of a view of the premises (if appropriate); (4) whether the plaintiff chose an inconvenient forum in Mississippi to vex, harass or oppress the defendant; (5) the burden on Mississippi courts in entertaining the suit; and (6) the local interest in deciding localized controversies at home. *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 728 So.2d 573, 575-76 (Miss. 1999). Based on these

11

factors, the out-of-state plaintiffs with no connection to Mississippi should be dismissed. Out-of-state witnesses are beyond the jurisdiction of the state's courts and cannot be compelled to testify. Additionally, Mississippi has no real interest in trying the out-of-state plaintiffs' claims against an out-of-state defendant.

¶19. Finally, ICRR claims and we agree that, if claims were brought separately, individual venue would be proper in Tunica County for only four of the plaintiffs - those who resided in Tunica County when the alleged cause of action accrued, or those whose cause of action accrued in Tunica County.[6]

## CONCLUSION

¶20. We hold that the trial court erred in denying ICRR's motion to transfer and/or dismiss. Therefore, we reverse the order of the Tunica County Circuit Court and remand this case to that court with the following instructions: all claims against out-of-state defendants based on causes of action which accrued out of state shall be dismissed based on forum non-conveniens, and all other plaintiffs' claims must be severed from those of Gregory, including claims of plaintiffs who allege exposure in Tunica County. All cases that cannot be brought individually in Tunica County should be transferred to a venue in which each plaintiff may have originally brought his or her claim, as required by Rule 82(d).

¶21. **REVERSED AND REMANDED.**

---

[6] The controlling venue statute in this case is Miss. Code Ann. § 11-11-5 (repealed 1/1/03) which states in pertinent part: "Actions against any railroad ... may be brought in the county where the cause of action accrued, in the county where the defendant has its principal place of business or in the county in which the plaintiff resided at the time that the cause of action accrued."

12

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**